[Kenan et al. v. Graham, Exec.]

# Kenan et al. v. Graham, Exec.

## Final Settlement of Estate.

1. *Wills; construction; heirs; residuary legatee.*—A will contained no residuary clause. A codicil provided for the division of the residue of the estate, pro rata, among the "heirs" of testatrix, resident in the State of Alabama. A later codicil bequeathed household effects which had not theretofore been disposed of, including a bequest of table linen, to the wife of a nephew of testatrix, who had not been mentioned in the will or first codicil, but who was a resident of Alabama. *Held:* That she was not a residuary legatee under the will.

2. *Executor, when chargeable with interest.*—An executor, who was one of the residuary legatees under a will, in the administration of the estate collected rents from real estate, money due on mortgages, dividends on stocks, and proceeds of the sale of stocks, and made distribution from time to time of funds received, leaving small balances in his hands at different times, but did not sell the real estate until about eight years after his appointment, owing to a depressed condition of real estate values, and a short time thereafter filed his accounts for final settlement (no partial settlements having ever been made). *Held:* That he was not chargeable with interest on the funds in his hands at different times.

3. *Same; anticipating fees; interest.*—An executor or administrator, being by Code provisions entitled to only two and a half per cent. on the amount of receipts and disbursements and on the appraised value of personal property distributed, is not entitled to anticipate his fees and use the money; and if he does so, ne is chargeable with interest from the date of such appropriation.

4. *Executor; ordinary services; commissions; amount of how determined.*—In determining the amount of commissions to be allowed an executor or administrator for ordinary services performed by him, the court should take into consideration the condition and value of the estate, the loss of time, risk, and responsibility, which the nature of the trust demands and which is actually incurred, and should allow such a reasonable remuneration, not exceeding the maximum statu-

tory allowance, as a prudent and just man would, in view of the circumstances of each case, consider a fair compensation, without, however, being governed by business charges usually made for like services.

5. *Same; extraordinary services.*—If extraordinary services are rendered, these may be compensated for beyond the statutory allowance, owing to the particular services rendered and the attending conditions and circumstances.

6. *Same; provision of will for liberal payment.*—A provision in a will that the executors are to be liberally paid for their services will never authorize an allowance for ordinary services, in excess of the maximum statutory allowance; the legislature having determined that to be a fair and liberal allowance.

7. *Same; when commissions excessive.*—Where an executor performed no extraordinary services, but only rented out real estate, collecting the rents therefrom, and the dividends on stocks, ana sold the real estate and some of the stocks, and the debts of the estate were small, an allowance to him of five per cent. on the amount of receipts and disbursements and upon the appraised value of personal property distributed, was excessive; being double the statutory limit.

8. *Same; evidence.*—On the settlement of an estate, where no extraordinary services are performed, evidence that the executor's services were reasonably worth a certain per cent. or a certain sum (in excess of the statutory limit of two and a nalf per cent.) is not admissible.

9. *Same; same.*—In the settlement of an estate evidence is admissible as to the services rendered by the executor in and about the administration, as giving information on which to base an allowance within the statutory limits.

APPEAL from the Probate Court of Dallas.

Tried before the Hon. P. G. WOOD.

This is an appeal by the legatees under the will of Marie Louise Kenan, deceased, from a decree rendered on final settlement of the administration of said estate by appellee as executor under the will.

Upon the hearing several witnesses were allowed to testify that a fair and reasonable compensation to the executor for his services would be ten per cent on the larger side of his account ($90,000), and one that a fair

[Kenan *et al.* v. Graham, Exec.]

and reasonable compensation would be $10,000.   To
this evidence objection was made by the legatees, the ob-
jection was overruled, and exceptions taken.

All other facts are sufficiently shown by the opinion.


PETTUS, JEFFRIES & PARTRIDGE, for appellant.—If the
administrator of an executor procrastinates making a
final settlement and distribution for an unreasonable
length of time and fails to prove facts justifying such
delay, he is chargeable with interest.—*Noble v. Jackson*,
124 Ala. 311; *Clark v. Knox*, 70 Ala. 620; *May, Admr.*,
*v. Green*, 75 Ala. 162; *Clark v. Hughes*, 71 Ala. 197;
*Englehardt v. Young's Heirs*, 76 Ala. 534; *Walker v.
Johnson*, 82 Ala. 347.

Interest with which an administrator or executor is
chargeable should be computed from the day the assets
are reduced to money and thus made ready for distribu-
tion; but a reasonable time should be allowed the admin-
istrator or executor to make preparation for and con-
summate a settlement.   What is a reasonable time must
depend, in a large measure, upon the facts of each par-
ticular case.—*Clark v. Hughes*, 71 Ala. 197; *Englehardt
v. Young*, 76 Ala. 534.

The executor in this case was chargeable with interest
on the amounts paid to himself before any compensation
was awarded by the court.   Under the statute (Code,
§ 219) the compensation to executors and administra-
tors must be allowed by the court, and the amount as-
certained before it becomes due or is payable to an execu-
tor.   Until the court has fixed compensation it is not
due.—*In re. Worthington*, 22 N. Y. Supp. 19; *In re.
Gerow*, 23 N. Y. Supp. 847; *In re. Richardson*, 23 N. Y.
Supp. 978; *In re. Rose's Estate*, 22 Pac. Rep. 86; *In re.
Willard's Estate*, 9 N. Y. 557; *Wheelwright v. Wheel-
wright*, 2 Redf. Sur. 501; *In re. Butler's Estate*, 9 N. Y.
Supp. 641; *McBride v. Hunter*, 64 Ga. 655; *Hodges v.
Armstrong*, 14 N. C. (3 Dev.) 253; 22 Am. Dig., p.
2958, § 2075.

The rules for determining whether an executor or
administrator shall receive compensation will be found

[Kenan *et al.* v. Graham, Exec.]

in *Hall v. Wilson,* 14 Ala. 295; *Smith v. Kennedy,* 38 Ala. 695.

The ordinary common duties of administrators and executors are to bury the deceased, prove the will, take out letters, make an inventory, collect the assets, pay the debts, and, lastly, to make distributions of the surplus according to law among those entitled.—Woerner's Am. Law of Admr., p. 1169, § 529; 2 Williams on Executors, 871-1310; Code 1896, §§ 45 to 277; 7 Am. & Eng. Ency. Law (1st ed.), 301; *Allen v. Martin,* 36 Ala. 330.

Extraordinary or special duties are those that are in special cases put upon executors beyond what the law imposes upon all executors—such as keeping the estate together, running and superintending farms, lending out money or making investments, etc. See cases cited under Code, 1896, § 219; *Noble v. Jackson, supra.*

MALLORY & MALLORY and A. D. PITTS, *contra.*—There is a conflict of authority as to whether an executor can actually draw and use his compensation or commissions until the same is actually allowed him. In some jurisdictions he is allowed to do so, and, in others, he may not, but, we apprehend, in none will he be charged interest on the reasonable amount retained in his hands with which to pay himself, when allowed, and there is no just reason why he should, because he merely retains what is finally his own, and never could be anyone else's. As to that, he is not detaining the legatees' money—it does not go to them. It would be a curious thing to allow a legatee interest on money which was retained for the purpose of, and finally allowed to the executor, as compensation. In *Eubank v. Clark,* 78 Ala. 84, this rule is recognized, and also in *Noble v. Jackson,* 124 Ala. 322.

HARALSON, J.—On the 6th July, 1891, Mrs. M. L. Kenan duly executed her last will, in which she appointed Chauncey and James K. Graham her executors, relieving them as such from giving bond. This will was duly probated on the 12th August, 1892. Both the persons named were appointed executors, and Chauncey

died December 1, 1893, leaving James K. as sole executor, who practically administered the entire estate under the will.

The inventory of the personal property showed that it consisted of stocks in different companies and banks, money, notes, household goods and silverware, amounting, at their face value, to $50,131.45, appraised at $75,363.45; and real estate of the value of $7,545, together, amounting to $82,908.45.

By the will the testatrix bequeathed her stocks to certain legatees whom she named, and, by codicil dated November 9th, 1891, she also made disposition of her household goods, silverware, etc. In this codicil she provided, "Should there be a residue of my estate remaining, let it be divided *pro rata* among the heirs resident in the State of Alabama, that is after paying Mr. Chauncey Graham and Jas. K. Graham liberally for their care and attention in the settlement of my estate."

The debts of the estate were very small, amounting to but a few hundred dollars, which were paid by the executors within a short time after their qualification. The household goods, etc., mentioned in the codicil, were soon delivered to the parties to whom they were given, amounting in value to $1,224.19.

In the year 1894 the executor delivered to the parties entitled, stocks amounting in value to $37,682, which, with the household goods, etc., which had been delivered amounted in value to $38,906.19. These stocks were valued and delivered as worth,—owing to the companies they were in,—from 25 to 57 per cent premium on their face value.

In the years 1894 and 1895 the executor paid money legacies amounting to $18,500,—those paid in 1894 amounting to $16,000, and those in 1895 to $2,500. The stocks which were distributed yielded the dividends, and until delivered, these dividends were collected by the executor and paid *pro rata* to the parties entitled to the stocks bequeathed to them.

Some of the stocks were not disposed of by the will, and these were sold at a price, the fairness of which is

not questioned. The proceeds of such sales, and the sales of the real estate, and collections from all sources, as shown by the account of the executor for final settlement, amounted to $53,547.92; and he had left, after disbursements, including commission to himself, attorney's fees, costs, etc., the sum of $16,315.80 for distribution.

The executors were among the residuary legatees. There were never any partial settlements of the administration offered to be made. The accounts and vouchers were filed for a final settlement on the 13th August, 1900, and the 27th September of that year was fixed by the court for the settlement, but the same was continued from time to time, until the 20th day of May, 1901, on which day the decree of the court appealed from was rendered.

It must be further stated, for the understanding of one of the questions raised on appeal, that on the 24th February, 1892, the testatrix added another and second codicil to her will, by which she made disposition of her household effects,—which effects she had not theretofore disposed of,—to parties therein named, all being persons named in her will and its first codicil, except Emma Kenan, to whom she gave her table linen. The words of this bequest were, simply, "Table linen to Emma Kenan, Will's wife." Emma was the wife of W. K. Kenan, one of the legatees under the will, and resided with her husband in Geneva county, Alabama.

There appears to be three questions raised on the appeal, around which all others are grouped: 1st. Was Emma Kenan one of the residuary legatees under said will, and did the court err in decreeing she was not, and was not entitled to share in the residuum of the estate? 2d. Should the executor have been charged with interest on funds of the estate in his hand, and if so, on what part thereof and for what time; and did the court err in overruling the motion to charge him with interest on certain funds of the estate? 3d. Did the court err in the allowance made to the executor as compensation for administering the estate?

1.    The original will of testatrix did no more than make bequests to certain persons therein named, and appoint her executors.    It contained no residuary clause. On the 9th of November, 1891, as stated, she executed the first codicil to it, in which, on account of the death of one of her legatees, she made a change of that particular bequest, and gave it, and another sum added thereto, to another party.    This codicil contains the only residuary clause to the will, which is set out above.

In *Graham v. DeVampert*, 106 Aa. 279, the word "heirs," as herein used, when taken with reference to the context, and the evident intention of the testatrix, was construed to mean legatees resident in Alabama. W. K. Kenan, husband of Emma, was one of the legatees, with others named in the will, who resided in this State, and Emma had not, either in the will or its first codicil, been anywhere mentioned.    She was not a niece of testatrix and bore no relation to her, except that she was the wife of one of her legatees who was connected with her.    Coming on to make a disposition of a few personal articles, not before bequeathed, and of comparatively small value, she gave them to her legatees whom she had theretofore named in her will; and going outside of these, gave her linen to Emma.    This gift was of small value, and it is inconceivable that testatrix intended thereby to make her a residuary legatee, with her Alabama legatees, to take with them a *pro rata* share of the residuum of her estate.    All the circumstances, as well as the will itself and its first codicil, exclude that idea.    She did not belong to the class of residuary legatees referred to in the residuary clause, found for the first and only time in the first codicil.    That clause, as is manifest, had reference alone to persons who were her Alabama legatees at the time she executed said first codicil.

2.    The executor, as stated, qualified in August, 1892, and filed his accounts and vouchers for a final settlement in August, 1900, about eight years after his qualification, without, in the meantime, having made any annual settlement.    Such delay, without explanation to justify it, would, ordinarily, be unreasonable.    Whether so or not

in this case, must be determined by the particular circumstances and facts of the case. It appears the executor did not, during this time, keep the entire estate in his hands. The estate consisted principally of stocks in dividend paying incorporated institutions, worth largely more than their face value; of notes, money, household goods and other personal assets, all amounting, at their appraised value, to $75,363.45; and real estate, in the city of Selma, amounting as valued, to $7,545. This real estate was city property and rent producing. The executor collected the dividends on the stocks bequeathed, for the benefit of those entitled to them; divided the personal articles bequeathed to those to whom they were given, and kept the real state rented, covering the rents into the assets of the estate to be divided. That it was well rented, is not questioned. All this was done in a manner, and within a time, about which there is no complaint raised against him. He did not sell the real estate, as appears, until April, 1900;—although he had procured orders for its sale long theretofore. It brought $12,945, amounting to $5,900 more than valued in 1892. The excuse he made for not selling it was that at the time it should have been regularly sold, such property in Selma was very depressed, and it could not have been sold to the advantage of the estate. Mr. Keith, who showed acquaintance with such matters, stated that from the years 1894 to 1900, it could not have been sold except at ruinous prices. The evidence is reasonably satisfactory to show that if this property had been sold prior to the time it was sold, it would have been at a great sacrifice. Mr. Graham testified that he attempted to make sales of it, and had a real estate agent in his interest to do so, but that the prices offered were such that he thought it unwise to sell. Under all the evidence we are constrained to hold that the appellants nor any one interested suffered anything by this delay in selling the real estate, but were really benefited thereby.

It was further shown that there were two law-suits involving about $10,000, in respect to the property on which the testatrix had claims, which were settled,—the

Webb mortgage in 1898 for $5,000, and the claim on the Stillwell lot in 1900, for $4,400

A statement is found in the record, filed by the executor and admitted to be correct, showing the balances on hand at the end of each month from September, 1892, to July, 1900  From this statement it appears the executor paid out and delivered various sums down to and including February, 1894, of over $16,000.  The eighteen months of administration did not expire till February 23d, 1894.  As appears the balance in his hands, on the last of February of that year, was $496.75.  This amount was increased to 1st of July, by $227.  In July he sold a bond amounting to $300, and stocks in different companies, all aggregating about the sum of $15,-000, which sum was reduced on the 1st of January, 1895, by disbursements properly made, to $6,243.91.  He only increased this amount, in the year 1893, by collection of $300, interest on a note; and by disbursements, during the year, there remained in hand, at the close of the year, the sum of $16.63. He had on hand, on the 1st January, 1897, $288.77; on the 1st January, 1898, $918.74; on the 1st January, 1899,—including the debt for the Webb mortgage, amounting to $5,000 paid in November, 1898,—the sum of $5,028.19; on the 1st January, 1900, $5,761.56, and a balance, at the filing of this statement, of $13,559.63,—subject to distribution.

From the foregoing we are led to conclude that the court did not err in refusing to charge the executor with interest on funds appearing to have been in his hands at different times, as the appellants proposed to do, except as we shall hereafter specify.  He appears to have managed the estate well and faithfully, giving reasonable time and attention to it, and except in the delay of his settlement, there is no complaint at his management.  He made nothing so far as shown, by the delay, more than any other residuary legatee.  As one of these residuaries, he would naturally have desired to subject the estate to no losses, and we are unable to hold that by this delay the appellants suffered anything for which the executor should be subjected to the payment of in-

38c

terest as proposed on balances at different times in his hands during the progress of the administration.

3. It appears that Chauncey Graham, the deceased executor, during his life was paid $400, on January 11, 1893, on June 13th, 1893, $55.94, and on October 30th, the same year, $728.65, aggregating $1,183.89.

There was paid to J. K. Graham, on July 2d, 1895, $755, on account of commissions; on April 9, 1896, on the same account, $700; $752.63 on April 5th, 1900, and $3,500, on June 1st, 1900,—aggregating $5,707.63, to which, if the sums paid to Chauncey Graham be added, we have the sum of $6,891.52, paid to these executors, in anticipation of commissions accruing to them out of said estate.

At common law administrators and executors were not entitled to any compensation for their personal trouble and loss of time, in the performance of their duties.—11 Am. & Eng. Ency. Law (2d ed.), 1277. In this State they are allowed "such commissions on all receipts and disbursements by them, as such, as may appear to the probate court a fair compensation for their trouble, risk and responsibility, not to exceed two and one-half per cent on the receipts and the same percentage on disbursements," etc.; and, "upon the appraised value of all personal property, and the amount of money and solvent notes distributed,   *   *   they shall be allowed the same commissions as upon disbursements."—Code, §§ 219, 220. From this it would seem that an executor or administrator is not entitled to anticipate his fees and use the money.—11 Am. & Eng. Ency. Law (2d ed.), 1280; *Noble v. Jackson*, 124 Ala. 312, 320. This rule, it seems to us, is a wise and conservative one, a disregard of which would tend to tempt the administrator or executor into misconduct in the administration. The evidence in the case shows very clearly that the amounts the executors paid themselves were on account of fees they presumed they would be entitled to. The surviving and acting executor should be required to pay interest on these amounts from the time they were respectively ap-

propriated, to the date of settlement. The probate court erred in not so charging them.

4. The statute creates a maximum limit to compensation to be allowed executors and administrators, for the ordinary services performed by them, and what shall be allowed, below or up to this limit, is to be determined according to the circumstances of each particular case. "The court in making the allowance is to look to the loss of time, risk and responsibility, which are demanded by the nature of the trust, and which is actually incurred, and to allow the trustee such a reasonable remuneration as a prudent and just man would, in view of the circumstances, consider a fair compensation, without, however, being governed by business charges usually made for like services." When thus allowed, the compensation is not, and should not be, but little, if anything, more than liberal indemnity. The condition and value of the estate should be a controlling consideration in all cases. *Gould v. Hays*, 25 Ala. 426, 432; *Clark v. Knox*, 70 Ala. 608, 615; *Woodruff v. Snedicor*, 68 Ala. 437; *Newberry v. Newberry*, 28 Ala. 691. If the estate has but few undisputed debts, its property consisting most largely of stocks, bonds or solvent securities, involving only ordinary care and attention in their handling and distribution, and of real estate which may be readily rented, and at the proper time divided or sold for division among those entitled, and the value of the estate is large, a liberal compensation may and often should be, less than the maximum statutory allowance, but never greater, even if the administration involves much care, attention and trouble. If extraordinary services are rendered, these may be compensated for beyond the statutory allowance, owing to the particuar services rendered, and the attending conditions and circumstances.

In this case no claim is made for extraordinary services. One has rarely seen an estate of a deceased person of so easy administration, and attended with less trouble or responsibility. The compensation for the administration, at the statutory allowance, would have been most liberal. The testatrix had the right, of course,

to fix the compensation to be allowed, whether much or little, and the executors would have been entitled to the same; but she did not do this, contenting herself with the direction that her property should go to certain legatees, adding,—"after paying Mr. Chauncey Graham and Jas. K. Graham [her executors] liberally for their care and attention in the settlement of my estate." The word "liberally," as there employed, means no more than compensation that is fair and just. It might mean, in some cases, less than the maximum statutory allowance, but never more, since that allowance has been determined by the law-makers, in the enactment of the statute, to be a fair and liberal allowance.

In *Waddy v. Hawkins,* 4 Leigh (Va.) 458, a testator directed that his executors should be handsomely paid out of his estate, for their trouble in discharging the trust, there being no extraordinary trouble in the administration. The court held that nothing be allowed beyond the usual commissions.

The case of *Noble v. Jackson, supra,* had reference to an estate, like the one before us, of the value of about $90,000, consisting of properties much the same as here. We there said: "The executors were charged with the duty of collecting up the assets, paying the debts of the testator and distributing the residue to the legatees under the will. It is clear to our minds that the full statutory commission on receipts and disbursements,— that is, two and a half per cent on $180,000,—would be excessive; their services in performing those duties in respect to this estate, would not be worth nearly as much as four thousand five hundred dollars."

Here, the court allowed as compensation to the executor,—properly exempting commissions on the value of the stocks and bonds and household goods, and the money which was on hand at the time of his appointment,—five per cent on the amounts received by him as executor, amounting to $44,855.37; the same on $38,-906.19, the value of stocks and bonds and articles of personal property delivered by him to the legatees, and the same per cent on all moneys paid and to be paid by

him to the legatees, and on all money disbursed and to be disbursed in the execution of the will,—amounting to $49,547.92, the total commissions being $6,665.45,—the same being five per cent on $133,309.48. This allowance was double the statutory limit of two and a half per cent on receipts, disbursements and upon the appraised value of the personal property, money and solvent assets distributed,—and exceeds by two and a half per cent the most liberal allowance that could be made under the statute. What amount, within the limits of the statute, having regard under the evidence, to the circumstances and conditions of the estate, and to his loss of time, risk and responsibility, should be allowed the executor as commissions, is a question primarily and properly to be left to the determination of the probate court.—*Noble v. Jackson, supra.* In the determination of this question, the provision in the codicil as to liberal compensation to the executors is, as has appeared, of no consequence.

5. The evidence of witnesses to prove that ten per cent on the larger side of the account,—or, as one or others may have put the compensation at $10,000,—was improperly admitted on the objections made thereto. So far as witnesses deposed to services rendered by the executor in and about the administration, the evidence was proper, as giving information to the court on which to base the allowance within the limits of the statute.

For the errors indicated, let the decree of the probate court be reversed and the cause remanded.

Reversed and remanded.