On Application for Rehearing

MURDOCK, Justice.
This Court’s opinion of March 14, 2014, is withdrawn, and the following is substituted therefor.
Bonnie Wehle, Penny Martin, and Sharon Ann Wehle (“the daughters”) appeal from the Bullock Circuit Court’s order on final settlement of the estate of their deceased father, Robert G. Wehle (“the estate”). In this “final order,” the circuit court denied the daughters’ claims against Thomas H. Bradley III, James H. McGowan, and Grady Hartzog, as the co-personal representatives of the estate (“the personal representatives”); the order also denied the daughters’ request that McGowan be removed as a cotrustee of the family trust created under Robert G. Wehle’s will and awarded attorney fees to the personal representatives. We affirm in part, reverse in part, and remand.

I. Facts and Procedural History

This is the second time this -case has come before us. In the previous appeal, Wehle v. Bradley, 49 So.3d 1203 (Ala.2010) (“Wehle I”), this Court summarized the facts as follows:
“Robert G. Wehle died on July 12, 2002. His will was admitted to probate, and [in August 2002] letters testamentary were issued to Bradley, McGowan, and Hartzog as co-personal representatives of Wehle’s estate. The will created a marital trust for Wehle’s wife, Gatra Wehle, and a family trust for the daughters and Wehle’s granddaughter, Debbie Kloppenberg. The personal representatives were named as cotrustees of both the marital trust and the family trust.
“In October 2005, the personal representatives petitioned the probate court for final settlement of the estate. They also filed an accounting of their administration of the estate. The accounting indicated that the personal representatives had paid themselves total compensation of $1,964,367.82, which, they allege, amounts to 5% of the value of *933 Wehle’s estate at the time the petition for final settlement was filed. The personal representatives argue that the amount of their fees is consistent with the statutory allowance for such fees. They also argue that Wehle told his attorney that he intended for the personal representatives’ fees to be approximately 5% of the value of his estate.
“The daughters filed an objection to the accounting, arguing, among other things, that, pursuant to § 43-2-844(7), Ala.Code 1975, the personal representatives were required to obtain prior court approval before compensating themselves out of the assets of the estate. The daughters also argued that the amount of the compensation exceeded the ‘reasonable compensation’ allowed by § 43-2-848(a), Ala.Code 1975.
“In March 2007, Gatra Wehle petitioned to have the administration of the estate removed to the circuit court. The petition was granted.
“The personal representatives moved the circuit court for a partial summary judgment on the daughters’ objections, arguing (1) that the will authorized the payment of the compensation to the personal representatives without prior court approval, and (2) that the statute of limitations barred the daughters’ claim that the fees of the personal representatives were excessive. On July 17, 2009, the circuit court granted the personal representatives’ motion for a partial summary judgment, stating:
“ ‘As to the claim that the Personal Representatives paid fees to themselves without obtaining Court approval, the Court finds that the terms of the Will expressly exempt the Personal Representatives from obtaining Court approval before payment of their fees. As to the claim that the fees paid were excessive, it is without factual dispute that [the daughters] had knowledge of the amount of these fees more than two years before they filed their contest of the fees and thus this claim is time barred.’
“On July 24, 2009, the daughters appealed to this Court from the circuit court’s judgment pursuant to § 12-22-4, Ala.Code 1975.”
49 So.3d at 1205-07.
In Wehle I, this Court concluded that “[b]eeause the payment of compensation to the personal representatives without prior court approval was not expressly authorized by Robert G. Wehle’s will, the circuit court erred in entering its partial summary judgment in favor of the personal representatives.” 49 So.3d at 1209; see also Ala.Code 1975, § 43-2-844(7). This Court reversed the circuit court’s judgment and remanded the case on that basis; ■it did not decide the issue whether the daughters’ “claim as to the excessiveness of the compensation is barred by the statute of limitations.” Id.
On remand, the circuit court held a hearing at which evidence was presented ore tenus as to the petition for final settlement of the estate. Thereafter, the circuit court entered its final order approving the compensation the personal representatives had paid themselves, i.e., $1,964,367.82, as “reasonable compensation” under § 43-2-848(a), Ala.Code 1975. The order denied the daughters’ claim seeking to have the personal representatives pay interest on the compensation because they had paid it without prior court approval. Also, in regard to other issues raised by the daughters, the order denied the daughters’ petition to remove McGowan as a cotrustee of the family trust, denied the daughters’ request to tax costs relating to Wehle I against the personal representatives, and awarded attorney fees and costs to the personal representatives in the amount of *934 $383,437.31 as to their defense against the daughters’ claims on final settlement.[1] The daughters appeal.

II. Standard of Review

To the extent the circuit court made factual findings based on oral testimony, those factual findings are entitled to deference by this Court under the ore tenus standard of review. Under that standard, ‘“we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court’s findings.’ ” Allsopp v. Bolding, 86 So.3d 952, 959 (Ala.2011) (quoting Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala.1990)). This standard is based on a recognition of the trial court’s unique position of being able to evaluate the credibility of witnesses and to assign weight to their testimony. See, e.g., Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538, 543 (Ala.1988). The deference owed a trial court under the ore tenus standard of review, however, does not extend to the trial court’s decisions on questions, of law. Appellate review of questions of law, as well as whether the trial court has properly applied that law to a given set of facts, is de novo. See, e.g., Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).

III. Analysis

A. Reasonableness of the Personal Representatives’ Fees

Under Alabama law,
“[a] personal representative is entitled to reasonable compensation for services as may appear to the court to be fair considering such factors that may include, but are not limited to, the novelty and difficulty of the administrative process, the skill requisite to perform the service, the likelihood, that the acceptance of the particular employment will preclude other employment, the fee customarily charged in the locality for similar services, the amount involved and the results obtained, the requirements imposed by the circumstances and condition of the estate, the nature and length of the professional relationship with the decedent, the experience, reputation, diligence, and ability of the person performing the services, the liability, financial or otherwise, of the personal representative, or the risk and responsibility involved, which shall not exceed two and one-half percent of the value of all property received and under the possession and control of the personal representative and two and one-half percent of all disbursements.”
Ala.Code 1975, § 43-2-848(a). Although the allowance of compensation for the personal representative and the amount of that compensation are mixed questions of law and fact, our cases state that decisions as to these issues are largely within the discretion of the trial judge. See Armstrong v. Alabama Nat’l Bank of Montgomery, 404 So.2d 675, 676 (Ala.1981). The amount of compensation to be allowed under § 43-2-848(a) “‘below or up to the maximum limit prescribed [thereby] is to be determined according to the circumstances of each particular case.’” Armstrong, 404 So.2d at 676 (quoting Smith v. McNaughton, 378 So.2d 703, 704-05 (Ala.1979)). In determining whether the trial court exceeded its discretion as to a com *935 pensation award under § 43-2-848(a), we must consider the amount of the award “in view of all the circumstances” of the administration of the estate, Ruttenberg v. Friedman, 97 So.8d 114, 122 (Ala.2012); see also, e.g., Armstrong, 404 So.2d at 676 (discussing the deference owed a determination of a personal representative’s fee made after the trial court heard ore tenus evidence).
Discussing the predecessor statute to § 43-2-848(a), this . Court in Armstrong explained that the statute creates
“ ‘a maximum limit to compensation to be allowed [personal representatives], for the ordinary services performed by them, and what shall be allowed, below or up to this limit, is to be determined according to the circumstances of each particular case. “The court in making the allowance is to look to the loss of time, risk and responsibility, which are demanded.... and which is actually incurred, and to allow ... such a reasonáble remuneration as a prudent and just man would, in view of the circumstances, consider a fair compensation, without, however, being governed by business charges usually made for like services.” When thus allowed, the compensation is not, and should not be, but little, if anything, more than liberal indemnity.’ ”
404 So.2d at 676 (quoting Kenan v. Graham, 135 Ala. 585, 595, 33 So. 699, 701 (1902)).
The estate was “very large and complex.” The estate was valued at more than $35,000,000 at the time of Robert G. Wehle’s death, and the estate contained some unusual assets, including competition-trained hunting dogs, partial ownership interests in thoroughbred horses, and artwork. The estate also included other business entities owned by Robert G. Wehle, and his estate plan included multiple trusts. It is undisputed that Robert G. Wehle chose th,e personal representatives because of his longstanding business and personal relationships with each of them and because of each personal representative’s expertise: McGowan is a lawyer who practices law in New York; Hartzog is a certified public accountant who practices accounting in Alabama; and Bradley is an expert in dealings with thoroughbred horses and hunting, dogs. Also, there was evidence indicating that Robert G. Wehle desired that.the personal representatives receive “the 5% maximum” for their services.
As noted above, the circuit court approved the compensation of $1,964,367.82 the personal representatives had paid themselves. The total receipts of the estate (assets and income during administration) through the time of .final settlement were $40,477,724.08; the total disbursements were $40,452,262.23. Based on the receipts and disbursements, the maximum fee the circuit court could have awarded the personal representatives under § 43-2-848(a) was $2,023,249.66.[2] Thus,' the compensation award does not . exceed the statutory maximum prescribed in § 43-2-848(a).
The daughters argue that the circuit court exceeded its discretion in awarding the compensation to the personal representatives, raising issues as to each of the factors in § 43-2-848(a). We note that the final order includes a review of each of the § 43-2-848(a) factors, the daughters argu *936 ments as to each of those factors, and a summary as to some of the evidence the circuit court accepted or rejected as to each factor. Further, the circuit court noted in the order:
“In analyzing these factors, the court took into consideration the exhibits provided and agreed upon by the parties, as well as the testimony of each of the Personal Representatives, and the expert witnesses who testified for both sides. The court considered the credibility of the expert witness testimony, as well as the weight to be afforded to that testimony, particularly in light of apparent limitations in the knowledge of the [daughters’] expert, Daniel Markstein, who admitted to having reviewed only a fraction of the available documentation describing the services performed by the Personal Representatives.”
As to the circuit court’s consideration of the § 43-2-848(a) factors, the daughters make the same arguments on appeal that the circuit court rejected or discounted in light of its consideration of the totality of the evidence and its credibility determinations. We see no need to discuss the daughters’ arguments in detail because they would be of no benefit to the bench and bar. The daughters essentially urge this Court to reweigh the evidence and the circuit court’s balancing of the § 43-2-848(a) factors in a manner that favors the daughters and that would mandate a lower compensation award. It is not the role of an appellate court, however, to reweigh testimony and other evidence or to substitute its judgment for that of the trial court as to such matters. See, e.g., Ex parte Blackstock, 47 So.3d 801, 805 (Ala.2009). Based on our review of the evidence presented to the circuit court, we cannot conclude that the compensation awarded by the court was without sufficient supporting evidence or that the circuit court exceeded its discretion in making the award. See Ruttenberg, supra.
In addition to discussing the § 43-2-848(a) factors, the daughters also argue that a comparison between the compensation awarded in the present case and the compensation approved for the personal representative in Armstrong v. Alabama National Bank, supra, demonstrates that the personal representatives’ compensation in the present case was excessive. The Armstrong Court affirmed a compensation award of $304,000 for a large, complex estate valued at $7,469,273.92. The award in Armstrong was below the statutory maximum, but the daughters note that the award was equal to approximately 4.08% percent of the value of the estate. 404 So.2d at 676. According to the daughters, a similar award in the present case would have yielded a compensation award of $1,645,273.22, rather than the $1,964,367.82 awarded by the circuit court.
We are not persuaded by the daughters’ comparison argument. First, we note that the formula for the maximum fee award under § 43-2-848(a) is not five percent of the value of the estate (though it is sometimes referred to in that manner); rather, it is “two and one-half percent of the value of all property received and under the possession and control of the personal representative and two and one-half percent of all disbursements.” As noted above, the award in the present ease is less than the maximum permissible award under § 43-2-848(a). More importantly, however, as the Armstrong Court acknowledged, “[t]he award of [personal-representative] fees is largely within the discretion of the trial judge,” and “ ‘what shall be allowed, below or up to [the maximum] limit, is to be determined according to the circumstances of each particular case.’ ” 404 So.2d at 676 (quoting Kenan, 135 Ala. at 595, 33 So. at 701 (emphasis added)). All large, complex *937 estates are not equal, and this Court did not intend for its holding in Armstrong to establish a benchmark as to what constitutes a reasonable compensation award for a personal representative of-a large, complex estate.[3]
Based on the evidence presented to the circuit court and the arguments made by the daughters, we cannot conclude that the circuit court exceeded its discretion in awarding the amount of compensation it awarded the personal representatives in the present case.

B. Interest on Payments Made Without Prior Court Approval

Section § 43-2-844(7), Ala.Code 1975, provides that “[ujnless expressly authorized by the will, a personal representative, only after prior approval of court, may ... [p]ay compensation of the personal representative.” It is undisputed that the personal representatives paid themselves compensation before obtaining court approval for that compensation. The daughters contend that the circuit court erred by denying their claim seeking interest from the personal representatives from the date of the compensation payments through the date those payments were approved by the circuit court.
The daughters first note that, in contradiction of the decision in Wehle I, the circuit court concluded in its final order that Robert G. Wehle’s will “expressly allowed advanced payments to be made to the Personal Representatives.” According to the circuit court, because the will authorized the payments and because the payments were made in good faith and upon the advice of counsel, there was no basis for imposing an interest charge against the personal representatives. The circuit court quoted several provisions of the will that it concluded “expressly give[ ] the Personal Representatives the right to advance themselves money.”
In Wehle' I, this Court noted several provisions of Robert G. Wehle’s will upon which the personal representatives sought to rely as justification for making compensation ' payments to themselves without first obtaining court approval. We concluded that those provisions did “ 'riot satisfy the requirement in [§ 43-2-844] that there be an “express provision” ’ authorizing the payment of such fees without court approval.” 49 So.3d at 1209 (quoting Green v. Estate of Nance, 971 So.2d 38, 42 (Ala.Civ.App.2007)).
As the daughters correctly observe, the circuit court’s conclusion on remand that no prior court approval was necessary violates the doctrine of the law of the case.
“ ‘Under the doctrine of the “law of the case,” whatever is once established between the same parties in the same ease continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated' continue to be the facts of the case.’ Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). See also Titan Indem. Co. v. Riley, 679 So.2d 701 (Ala.1996). ‘It is well established that on remand the issues decided by an appellate court become the “law of the case,” and that' the trial court must comply with the appellate court’s mandate.’ Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989).”
Southern United Fire Ins. Co. v. Purma, 792 So.2d 1092, 1094 (Ala.2001). It does not matter that the circuit court in some *938 instances in its order quoted provisions of the will this -Court did not quote in Wehle I, The .personal representatives could'have cited those provisions as authority for the premature payments in their appeal in Wehle I; they did not do so. Moreover, whether they did so or not, the issue, at hand — whether the will contained “express provisions” authorizing the payment of fees to personal representatives without prior court approval — was before this Court and was decided by this Court in Wehle I.
“‘Under the law of the case doctrine, “[a] party cannot on a second appeal relitigate issues which were resolved by the Court in the first appeal or which would have been resolved had they been properly presented in the first appeal.” ’ Kortum v. Johnson, 786 N.W.2d 702, 705. (N.D.2010) (quoting State ex rel. North Dakota Dep’t of Labor v. Riemers, 779 N.W.2d 649 (N.D.2010) ...); see also Judy v. Martin, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) (‘Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court. C.J.S. Appeal & Error%. 991 (2008)....’)”
Scrushy v. Tucker, 70 So.3d 289, 303-04 (Ala.2011)(emphasis omitted); see also Schramm v. Spottswood, 109 So.3d 154, 162 (Ala.2012) (applying the law-of-the-case. doctrine where a party attempted to “advance a new argument in order to revisit an issue already decided by the trial court” and affirmed in a previous appeal).
Notwithstanding the foregoing, this Court did not expressly determine in Wehle I whether the personal representatives owed the estate interest for making the compensation payments to themselves without prior court approval. As to that issue, the circuit court listed several other reasons for rejecting the daughters’ interest claim. Among those reasons was the threshold, determination that the daughters’ interest claim was barred by the statute of limitations. The circuit court noted that it is undisputed that in 2003 .the daughters received a copy of the estate-tax return filed by the personal representatives. That tax return reflected compensation for the personal representatives in the amount of $1,763,459. The daughters did not file any objection to the payment of compensation until February 20, 2007, when, in response to the personal representatives’ petition for final settlement of the estate, the daughters filed their “Objection to Accounting and Application to Remove Personal Representatives.” As the circuit court noted, the daughters’ objection to the payments was filed over three years after they allegedly became aware that payments had been made to the personal representatives. The circuit court found that the daughters’ claim for interest therefore ran afoul of the two-year limitations period prescribed in § 6-2-38(i), Ala.Code 1975, which the circuit court found to be applicable in this case.[4]
We reject the circuit court’s conclusion that the daughters’ claim for interest was barred by the statute of limitations prescribed by § 6 — 2—38(Z). The daughters’ claim is based on § 43-2-509, Ala. Code 1975, which states that, “[i]f any executor or administrator uses any of the funds of the estate for his own benefit, he is accountable for any profit made thereon or legal interest.” This statute does not state when the interest must be paid, only *939 that the personal representative eventually is to be held “accountable” for such interest. That is, there is no' requirement that the personal representative must begin paying the prescribed interest immediately after advancing to himself or herself the fees in question. Instead, in cases where it is determined that the statute requires the payment of interest by the personal representative, that obligation, like any other obligation of the personal representative, must be ordered by the trial court as part of the accounting on final settlement of the estate. See Ala.Code 1975, § 43-2-500 et seq. We therefore reject the notion that the daughters somehow ran afoul of a statute of limitations when, in connection with the settlement of the estate, they made a claim for an. appropriate “accounting] for .... legal interest” alleged by them to be owed by the personal representatives for the misuse of funds, of the estate during its administration.
The circuit court also concluded that the daughters “should be equitably estopped from asserting a claim for interest against the-Personal Representatives in this case.” The circuit court erred as to its ruling on equitable estoppel in at least two respects.
' [16-18] First, in making payments to themselves without obtaining prior court approval, the personal representatives violated their statutory duty' under § 43-2-844(7). Their “dereliction in duty” precluded them from using equitable estoppel as a defense to the daughters’ interest claim. As this Court has explained:
“ ‘The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience. Mazer v. Jackson Ins. Agency, 340 So.2d 770 (Ala.1976). The party asserting the doctrine of equitable estoppel may not predicate his claim 'on his oim dereliction of duty or wrongful conduct. Draughon v. General Finance Credit Corp., 362 So.2d 880, 884 (Ala.1978).’
“Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765, 768 (Ala.1996).
■“In order for the doctrine of equitable estoppel to apply, a party must demonstrate:
‘““(1) That ‘[t]he person against, whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on’;
“ ‘ “(2) That ‘the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon [the] communication’; and
“ ‘ “(3) That ‘the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.’ ”'
“ ‘Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 64 (Ala.1996), quoting General Electric Credit Corp. v. Strickland Div. of Rebel Lumber Co., 437 So.2d 1240, 1243 (Ala.1983).’
“Allen v. Bennett, 823 So.2d 679, 685 (Ala.2001).”
BSI Rentals, Inc. v. Wendt, 893 So.2d 1184, 1187-88 (Ala.Civ.App.2004) (emphasis added).
Second, the circuit court based its -conclusion on the daughters’ having received a copy of the estate-tax return. The estate-tax return, however, described the amount the personal representatives intended to *940 claim, as compensation for their services as of the date of the filing of the return. The estate-tax return did not indicate whether the personal representatives had actually-paid themselves at the time the return was filed. Accordingly, the doctrine of equitable estoppel provides no basis for the circuit court’s decision.
Although none of the above-discussed grounds supports the circuit court’s decision to deny the daughters an award of interest in connection with the premature payment by the personal representatives of fees to themselves in violation of § 43-2-844(7), the personal representatives have submitted to this Court a supplemental filing in which they invoke this Court’s recent decision in Ruttenberg v. Friedman, 97 So.3d 114, 122 (Ala.2012), a case decided after briefing was completed in the present case. The personal representatives argue that Ruttenberg supports the circuit court’s decision to deny the daughters’ interest claim.
In Ruttenberg, the widow and two of the three children of the decedent, Harold Ruttenberg, argued that the personal representatives in that case had “breached their fiduciary duty by violating § 43-2-844(7),” specifically by paying themselves $800,000 in compensation without obtaining prior court approval. 97 So.3d at 134. When addressing whether the personal representatives in Ruttenberg had breached their fiduciary duty by not obtaining court approval before making compensation payments to themselves, this Court reasoned:
“Section 43-2-844(7), Ala.Code 1975, states, in part: ‘Unless expressly authorized by the will, a personal representative, only after prior approval of court, may ... [p]ay compensation to the personal representative.’ However, in this case, any error in the prior payment of coexecutors’ fees for ordinary services without prior court approval is moot. Here, the probate court took evidence and heard argument about the reasonableness of the requested fees, considered the statutory factors applicable to determining a reasonable fee, and credited the total fee awarded by the amount the coexecutors had previously paid themselves. Specifically, the probate court awarded the coexecutors $1,165,937 in fees for ordinary services and said: ‘$800,000 has been properly paid.... The remaining $365,937 is due to be paid in equal shares of $182,968.50.’ Therefore, any error ivas remedied when the probate court issued its final award, after taking into consideration the statutory factors set out in §§ 43-2~8⅛8 and -682, Ala.Code 1975, and then crediting the amount the coex-ecutors had paid themselves against the total fee awarded to the coexecutors for ordinary services.”
97 So.3d at 134-35 (emphasis added).
This Court in Ruttenberg did not specifically discuss the issue whether personal representatives who pay themselves compensation without prior court approval must pay interest to the estate on such payments. As noted above, § 43-2-844(7) states that, “[ujnless expressly authorized by the will, a personal representative, only after prior approval of court, may ... pay compensation of the personal representative.” (Emphasis added.) Thus, where the will does not authorize the personal representative to make compensation payments to himself or herself without prior court approval and the personal representative makes such payments, he or she violates § 43-2-844(7) and deprives the estate of funds before being legally authorized to do so.
Section 43-2-509 provides that a personal representative who “uses any of the funds of the estate for his own benefit ... *941 is accountable for any profit made thereon or legal interest.” Our courts have long held that, pursuant to § 43-2-509 or its precursor, a personal representative must pay interest from the date he or she pays himself or herself compensation without court approval to the date he or she obtains court approval for the compensation amount at issue. See, e.g., McCraw v. Cooper, 218 Ala. 186, 190, 118 So. 333, 337 (1928) (affirming an award of interest against a personal representative who had paid himself compensation without prior approval by the trial court, where the trial court eventually allowed the compensation, “as to the reasonableness of which, in amount there [was no dispute]”); see also, e.g., Walsh v. Walsh, 231 Ala. 305, 307-08, 164 So. 822, 824-25 (1935) (“[I]n the case of Kenan v. Graham, 135 Ala. 585, 33 So. 699 [ (1903) ], the court held that an executor is not entitled to anticipate his fees and use the money. If he does so, he is chargeable with interest for the time the money was thus appropriated to the date of settlement”). The same legal principle has been applied to other fiduciaries who were required to obtain court approval before paying themselves compensation. See Gordon v. Brunson, 287 Ala. 535, 542-43, 253 So.2d 183, 189 (1971) (“[T]rial court erred in charging only 4% simple interest on the wards’ money wrongfully advanced by the guardian to himself [for his compensation], and should have calculated such interest at the rate of 6% per annum, compounded annually from date of the advance to the date of the decree....”).
Also, we note that in enacting the Probate Procedure Act, § 43-2-830 et seq., Ala.Code 1975, of which § 43-2-844 is a part, the legislature made numerous changes and clarifications regarding probate procedure in Alabama. See Act No. 93-722, Ala. Acts 1993. The legislature made no change, however, that would call into question this Court’s precedents holding that a personal representative must pay interest on compensation payments made by the personal representative to himself or herself without prior court approval. Indeed, the enactment of the Probate Procedure Act supports the conclusion that the legislature did not approve of personal representatives’ paying themselves compensation without prior court approval in that the legislature chose to reaffirm the statutory language at issue in this appeal: “Unless expressly authorized by the will, a personal representative, only after prior approval of court, may ... [p]ay compensation of the personal representative.” § 43-2-844(7).
Furthermore, in regard to the history behind § 43-2-844, that section references seven actions of a personal representative that require “prior -court approval.” Section 43-2-844 thereby stands in contrast to § 43-2-843, Ala.Code 1975, which authorizes a personal representative to take numerous actions without prior court approval. . In addition, § 43-2-843 is substantially a verbatim adoption of § 3-715 of the Uniform Probate Code, with one glaring exception: Under § 3-715 the seven items enumerated in § 43-2-844 are included in the list of actions a personal representative may take without obtaining prior court approval. In other words, the Alabama Legislature clearly acted purposefully in departing' from § 3-715, a proposed uniform law, when it required “prior court approval” for the actions listed in § 43-2-844.
Because the legislature has clearly indicated its disapproval of compensation payments to personal representatives without prior court approval and because the legislature has indicated no disapproval of this Court’s precedents requiring payment of interest where compensation payments are made without such prior approval, we reaf *942 firm the principle recognized in the above-discussed precedents.[5]
Based on the foregoing, we conclude that the circuit court erred by denying the daughters’ interest claim.

C. Circuit Court’s Failure to Remove McGowan as a Cotrustee of the Family Trust

The daughters requested that the circuit court remove McGowan as a cotrus-tee of the family trust created under Robert G. Wehle’s will. As to that claim, the circuit court’s order states:
“[T]he record is devoid of any reference to such a claim during the course of the ' trial. The [daughters] simply offered no evidence to support a conclusion that McGowan should not continue to serve as trustee, as required by the express wishes of the testator, Robert Wehle. While the [daughters] question the amount of compensation paid to each of the Personal Representatives, at no point did the [daughters] offer any evidence of impropriety with respect to McGowan’s presiding over the Family Trust. Without evidence suggesting some notion of impropriety, bad faith, breach of fiduciary duty or self dealing, there is simply no basis upon which this Court can entertain such a position. Thus, the Court finds that the [daughters] have simply failed to present any evidence, much less sufficient evidence, justifying removal of Mr. McGowan from his position as Trustee.
“Despite failing to offer any, evidence at trial, the [daughters] argue in post-trial briefing that Mr. McGowan should be removed as a trustee simply because he is no longer needed to serve in that role. However, this is an insufficient basis upon which to remove a trustee. The-final Will & Testament of Robert G. Wehle specifically called for Mr. McGowan to serve in this capacity. The Court will not disturb the wishes of the testator simply based upon the argument that a single trustee rather than multiple trustees is sufficient to manage the affairs of the Trust.
“The [daughters] also argue that the trustees participated in a decision that was detrimental to-the taxation of the trust beneficiaries. However, the Court will' not consider these post-trial arguments that were never raised at trial. The trustee was not provided with an opportunity to defend himself from these claims or provide any explanation. It is fundamental that a litigation defendant be -informed of the allegations against him 'before being required to defend himself. Because Mr. McGowan was not properly informed of these alle'gations nor given an opportunity to de-fqnd himself during the course of the trial of this matter, those allegations are rejected' as improperly and untimely made and will not be considered. Thus, the Court finds that there is no basis to remove Mr. McGowan from his position as trustee over the Family Trust.”
“The removal .of a trustee has long Been established as a matter which rests in the sound discretion of the trial court. Our scope of review is therefore limited to determining whether the court has abused *943 its discretion.” In re Estate of Amason, 369 So.2d 786, 789 (Ala.1979).
The daughters refer us to § 19-3B-706(b), Ala.Code 1975, which provides that a court may remove a trustee where
“(1) the trustee has committed a serious breach of trust; [or] .
[[Image here]]
“(3) because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries.”[6]
■ The daughters offer two arguments as to why they believe the circuit court exceeded its discretion in refusing to remove McGowan as a cotrustee of the family trust. First, they contend that McGowan’s presence as a cotrustee is no longer der sired or needed and adds no value to the management of the family trust and that he thus should be removed. The fact that the daughters may no longer consider McGowan’s services as necessary, desired, or valuable to the family trust, however, is not sufficient to satisfy § 19-3B-706(b)(l) or (3). Even if- those allegations were true, they do not establish that McGowan committed a serious breach of trust, that he was unfit to serve as a cotrustee, that he was unwilling to serve as a cotrustee, or that he had persistently failed to administer the trust effectively.
Second, the daughters argue that McGowan committed a serious breach of trust by participating in a decision to treat all cash received from shares held by the estate in thoroughbred race horses as income rather than creating a depreciating reserve. The circuit court noted that the daughters did not raise this argument until tlieir posttrial brief; thus, it considered the argument untimely. The daughters do not respond to the reason the circuit court gave for rejecting their argument. Instead, they argue on appeal the merits of the issue, which the circuit court did not reach, and they provide no legal authority ■as to the timeliness ground on which the circuit court relied. Based on well settled principles of appellate review, we will not reverse a judgment of a trial court under such circumstances. See, e.g., Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983)(holding that, in order to secure a reversal, “the appellant has an affirmative duty of showing error upon the fee-' ord”).
D. Award of Attorney Fees to. the Personal Representatives
The circuit court awarded the personal representatives $383,437.31 for attorney fees and costs relating to their defense of the daughters’'claims. Section 43-2-849, Ala.Code 1975, states:
“If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, the personal representative is entitled to receive from the estate necessary expenses and disbursements, including, *944 but not limited to, reasonable attorneys’ fees incurred.”
“An award of attorney’s fees is within the trial court’s discretion, subject to correction [only when the court exceeds] that discretion.” Clement v. Merchants Nat’l Bank of Mobile, 493 So.2d 1350, 1355 (Ala.1986).
The circuit court concluded that the personal representatives defended against the daughters’ claims in good faith and that the personal representatives were entitled to attorney fees and costs “from any available funds of the Estate.”[7] The circuit court explained:
“In approving this fee request, the Court considered the criteria established by the Alabama Supreme Court used for determining the reasonableness of requested attorney’s fees, including the nature of the employment, the labor required for the discharge of the services, the time consumed, the professional experience and reputation of the attorneys, the weight of their responsibilities, the success achieved, the reasonableness of the expenses, the fact that the charges were reasonable hourly charges, the nature and length of the professional relationship, the customary fees charged in the locality, the preclusion from other employment required by the time spent on this case, and the time limitations imposed by the circumstances of the case. See, Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala.1988). With that criteria in mind, there is no question that the fees and costs requested by the Personal Representatives are reasonable.”
The circuit court’s order references criteria that have been identified by this Court as relevant to an award of attorney fees. As this Court noted in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala.1988):
“[T]he criteria to be considered by the trial court in determining a reasonable attorney fee in Alabama are set forth in Peebles v. Miley, 439 So.2d 137 (Ala.1983).
“In Peebles, this Court added five more criteria to the seven that had been enumerated in [previous] cases. The complete list of criteria used in the estimation of the value of an attorney’s services now includes the following: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Of course, not all of the criteria will be applicable. ‘Indeed, there would hardly ever be a case where the [determination] of attorney’s fees brought into play every criterion.’ Graddick v. First Farm *945 ers & Merchants National. Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).”
530 So.2d at 749.
“The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.” Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992). The daughters contend that the circuit court exceeded its discretion in awarding attorney fees and costs to the personal representatives because the personal representatives did not submit any evidence to document the attorney fees and costs for which they were seeking reimbursement. They contend that the circuit court’s award of. attorney fees and costs was made based solely on a simple oral motion, from counsel for the personal representatives and a two-page argument in the personal representatives’ post-hearing brief. The daughters contend that this was not sufficient to support the award because “[i]t is well settled that ‘the statements of counsel in a pleading or brief are not evidence.’ ” Watson v. Whittington Real Estate, LLC, 16 So.3d 802, 809 (Ala.Civ.App.2009) (quoting State Dep’t of Revenue v. Wells Fargo Fin. Acceptance Alabama, Inc., 19 So.3d 892, 897 (Ala.Civ.App.2008)).
Although there is significant merit in the daughters’ argument, it fails to acknowledge certain aspects of the record that provide support for the circuit court’s decision that an attorney-fee award is appropriate in this case. It is true that “Applicants for an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours.” City of Birmingham v. Horn, 810 So.2d 667, 682 (Ala.2001). As in most cases, however, the applicants in the present case were not required to meet this burden unaided by the trial judge’s familiarity with the case and other matters germane to the decision at hand.
First, the circuit court in this case heard and observed the attorneys “in action” in the courtroom at hearings and at trial and no doubt in chambers at various conferences. As a starting point, therefore, the court at least knew the time spent by the attorneys in those appearances and the quality of the representation rendered by the attorneys in the same. Second, the circuit court received and, we must presume, read the attorneys’ motions, briefs, and other written submissions throughout the course of this very lengthy and involved case. In addition, at trial the personal representatives introduced testimony of an expert witness who testified that, in his opinion, an attorney fee was due to be awarded in this case.
We therefore think it incorrect to posit that the circuit court was without- any “evidence” upon which to consider the fee request. And, in light of such “evidence” as the circuit court did have, as well as on the circuit court’s general experience and its particular knowledge of this case, we cannot agree that it was without any basis on which to conclude that a substantial-attorney fee was due. The circuit court had information from which it could at least partially assess several of the Peebles v. Miley, 439 So.2d 137 (Ala.1983), factors, namely: (1) the nature and value of the subject matter of the employment, (2) the learning and skill, and to some extent the labor, requisite to its proper discharge, (3) to some extent, the time consumed, (5) the weight of responsibilities undertaken by the attorneys,'and (6) the measure of success achieved. The circuit court may not have had full knowledge of the “labor requisite to the proper discharge” of the services needed or the “time consumed.” And the circuit court may or may not have had adequate knowledge of the profession *946 al experience and reputation of the attorneys involved or the actual amount or reasonableness of the expenses incurred. There is no. basis in the record, however, from which to conclude that the circuit court had any knowledge of whether the fee was fixed or contingent, what fee was customarily charged in the locality for the type of work performed, whether the employment was likely to or did preclude other employment, and what time limitations were imposed by the client. That said, we should note that it is not necessary in every case for the trial court to have evidence of every one of the Peebles factors. . See, e.g., Graddick v. First Farmers & Merchants Nat’l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
. In this case, however, it does not appear that the circuit court had an adequate factual record for making the particular award it made. Without implying any limitation on the relevance of other Peebles factors, we note the lack of any evidence of the time consumed outside appearances before the circuit court, and no evidence of the total amount of time consumed both in and out of the courtroom. Although such information is not always of itself determinative of a fee request, it typically is an important consideration. Indeed, “it has been generally recognized that the amount of time consumed should be the first yardstick used by the trial court.” Clement, 493 So.2d at 1355. And although the aforesaid expert did testify that, in his opinion, attorney fees should be awarded in this case, that testimony was conclusory. There was no testimony as to the total fee that should be awarded; no proposed amount or other details were discussed;, and the record contains no evidence indi-eating that the witness was aware of how much time the attorneys had spent in performing their duties, whether that time was reasonable, or at what rate to value the time spent by the attorneys in and out of the courtroom.
Finally, we emphasize that a “trial court’s order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation.” City of Birmingham, 810 So.2d at' 682. The circuit court’s order in this ease, con-clusory-in nature, fails to meet this standard.
Considering all the foregoing, we believe the correct result in this case is to reverse the circuit court’s order insofar as it determined the amount of the attorney fees and to remand this case for the circuit court (1) to conduct a hearing in which both sides can introduce the evidence necessary to allow the circuit court to more fully consider the Peebles factors arid (2) to issue an order that is consistent with this opinion and' that “aIlow[s] for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation.” City of Birmingham, 810 So.2d at 682; see also Lolley v. Citizens Bank, 494 So.2d 19 (Ala.1986); Van Schaack, supra.[8]
E. Taxing of Costs of the Appeal in Wehle I
In May 2010, the daughters filed a timely motion in the circuit court asking that coui't to tax certain costs of the appeal in Wehle I against the personal- representatives.[9] In support of the motion, the *947 daughters filed an itemized and verified bill of costs. -The circuit court denied the daughters’ motion.
The certificate of judgment issued by this Court in Wehle I ordered that, “unless otherwise ordered by this Court or agreed upon by the parties, the costs of this cause are hereby taxed as provided by Rule 35, Ala. R,App. P.” Rule 35(a), Ala. R.App. P., provides, in pertinent part, that, “if a judgment is reversed, costs shall be taxed against the appellee unless otherwise ordered.” Also, this Court has stated: -
“ “When this Court reverse[s] a trial court’s judgment and awards costs to the appellant, the trial court has no discretion in awarding costs. Ex parte Blue Cross & Blue Shield of Alabama, 473 So.2d 1045 (Ala.1985). The trial court must award the appellant those costs of appeal that the appellant properly incurred. Rule 35(a), [Ala.] R.App. P.’ ”
Kirkley v. United Methodist Church, 765 So.2d 626, 627-28 (Ala.1999) (quoting Smith v. Player, 630 So.2d 400, 401 (Ala.1993)).
Although the resolution of this issue in favor of the daughters appears to be straightforward, the personal representatives argue that in Kirkley, Smith, and other cases that have stated the above-quoted propositions the certificates of judgment expressly stated that the costs of the appeal were to be taxed against the appellees. In this instance, they note, the certificate of judgment simply stated that costs were to be taxed in accordance with Rule 35, Ala. R.App. P. The personal representatives contend that the difference in wording means that the circuit court was free to “interpret” the appropriate taxation of costs. The personal representatives’ position is patently without merit.
There is no ambiguity in this Court’s certificate of judgment in Wehle I, It states that costs are to be taxed “as provided by Rule 35, Ala. R.App. P.” Rule 35 unequivocally states that costs are to be taxed against the appellee when a trial court’s judgment is reversed, and this Court has not expressly ordered otherwise. Therefore, the circuit court violated this Court’s mandate in failing to tax the costs of the appeal in Wehle I against the personal- representatives;

TV. Conclusion

We affirm the circuit court’s order insofar as the amount of compensation awarded to the personal representatives and insofar as it refused to remove McGowan as a cotrustee of the family trust. We reverse the circuit court’s order insofar as the amount of attorney fees and costs it awarded the personal representatives and insofar as it denied the daughters’ interest claims and failed to tax the costs of the appeal in Wehle I against the personal representatives.
We once again remand this case to the circuit court for the purposes of conducting an evidentiary hearing as to the personal representatives’ claim for attorney fees and costs, of taxing the costs of the appeal in Wehle I against the personal representatives, .and of awarding interest against the personal representatives and for.the entry of a judgment consistent with this opinion.
APPLICATION FOR REHEARING GRANTED; OPINION OF MARCH 14, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
STUART, BOLIN, PARKER, SHAW, - MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.-

. The circuit court also approved a payment of $20,000 to Hartzog & Company, P.C., for work the daughters alleged Grady Hartzog also was compensated for as a personal representative. The daughters have not challenged on appeal the payment to Hartzog & Company, P.C.; however, they do include this payment in connection with their argument that the compensation awarded Hartzog for his services as a personal representative was unreasonable.

. We note that the circuit court opined that the personal representatives were entitled to the statutory maximum, but it awarded them only what they had paid themselves. Had the circuit court awarded the personal representatives' the statutory maximum award, they would have ■ received an additional $58,881.84.

. Indeed, the Armstrong Court stated that, “though we consider the fees awarded to be somewhat high, nevertheless, under the applicable standard' of review, wé cannot conclude that the trial court abused its discretion.” 404 So.2d at 677,

. In light of our disposition of. this issue and the discussion that follows, we .do not address the issue whether the circuit court was correct as to the applicability of the two-year statute of limitations found in § 6-2-38(Z).

. ‘ In Ruttenberg, we discussed whether the court may, in effect, “ratify” such compensation payments when assessing, the reasonableness of the personal representatives’ compensation. To read Ruttenberg as addressing the issue of interest would mean, among other things, that this Court sub silentio overruled the line of precedents discussed in this opinion and that we have turned § 43-2-844 from a statute disallowing such payments unless preapproved into a statute allowing such payments unless subsequently disapproved. We decline to so read Ruttenberg.

. Section 19-3B-706(b) also provides that a trustee may be removed where
"(4)(A) there has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries;
"(B) the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust; and
“(C) a suitable co-trustee or successor trustee is available/'
The daughters make no argument as to whether § 19-3B-706(b)(4) might apply in the present case, and we therefore express no opinion with respect to that argument.

. According to the personal representatives, at the time of the hearing on final settlement, they had disbursed the estate’s assets and had no funds with which to pay their claim for reimbursement of attorney fees and costs. They nonetheless sought an award of attorney fees and costs so as to be in a position to reimburse themselves should additional assets of the estate become available.

. Van Schaack and Lotley appear to serve at least as examples of cases where this Court remanded the case for reconsideration of the attorney-fee issue. •

. The daughters filed the motion and supporting documentation within 14 days of the issuance of this Court's certificate of judgment in Wehle I. See Rule 35(c), Ala. R.App. P.