MURDOCK, Justice.
The opinion of September 30, 2016, is withdrawn, and the following is substituted therefor.
Margie Wylie appeals from the Montgomery Circuit Court's affirmance of the Montgomery Probate Court's decision removing her as personal representative of the estate of Derrell Cockrell, appointing a successor personal representative for the estate, and assessing over $19,000 in costs against Wylie. We affirm the judgment of the circuit court in part and reverse it in part.
I. Facts
In 1996, Derrell Cockrell ("Derrell") formed Alabama Steel Erectors, L.L.C. ("ASE"), a company that constructed metal buildings. The articles of organization of ASE stated that Derrell and Wylie were ASE's initial members and that "[o]perational management in [ASE] shall be solely vested in Derrell Thomas Cockrell." The articles also stated that "[r]emaining members shall have the right to continue the business of [ASE] following the death, retirement, resignation, expulsion, bankruptcy, or dissolution of a member or upon the occurrence of any other real event which terminates the continued membership of a member." The "operating agreement" of ASE reiterated that Derrell would have "sole operational authority in [ASE]," but *310 it added that "the duties of bookkeeping have been assigned to Marge Wylie." The operating agreement also provided that "both parties shall not be entitled to one-half of each of the profits from the operation of [ASE]" and that "the share of profits and losses shall be determined by the managing partner, Derrell Thomas Cockrell." According to testimony in the hearing in the probate court, as well as a 2009 federal tax return for ASE, Derrell held a 90 percent interest and Wylie held a 10 percent interest in ASE.
Derrell died on October 4, 2009. On November 30, 2009, the Montgomery Probate Court issued letters testamentary to Wylie as personal representative of Derrell's estate. Derrell's will devised his "house and curtilidge [sic] located at 463 Larkwood Drive, Montgomery, Alabama," to Karen Jankowski, a woman described by witnesses in the probate-court hearing as Derrell's girlfriend who had been living with him before his death. In his will, Derrell left "all [his] guns, [his] boat and [his] 1996 Pick Up Truck" to his brother, Edwin Cockrell. The will further provided:
"I hereby give and devise all of the rest, residue and remainder of all property owned by me or in which I have an interest, wherever located, whether real, personal, or mixed, as follows:
"A. A One-fourth share each to Janet Cockrell, Dakoda Zarlip, and Kanada Zarlip, per stirpes.
"B. A One-fourth share split between Miranda Cockrell and Timothy Cockrell, per stirpes."
Timothy Cockrell and Janet Cockrell are Derrell's children. Miranda Cockrell is Timothy's daughter, i.e., Derrell's granddaughter. The relationship, if any, of Dakoda Zarlip and Kanada Zarlip to Derrell is not reflected in the record. Timothy, Janet, Miranda, Dakoda, and Kanada are hereinafter collectively referred to as the "residuary devisees." We note that, at some point in the estate-administration proceedings, the probate court appointed a guardian ad litem to protect the interests of Miranda, Dakoda, and Kanada, who are minors.
With regard to Wylie's duties as personal representative of Derrell's estate, the will provided that Derrell
"relieve[d Wylie] ... from making any inventory or accounting to any person or Court for [her] administration of my estate; ... [gave] and grant[ed] to [Wylie] full power and authority in the administration of my estate, including full power and authority to manage, operate or liquidate any business or businesses in which I may be engaged at the time of my death, as full to all intents and purposes as I myself could do, if I were living."
According to testimony from two witnesses at the probate-court hearing, Wylie approached Timothy at Derrell's funeral visitation on October 7, 2009-before she had been appointed personal representative of Derrell's estate-and told him that he would be getting only $5,000 from Derrell's estate and that he should sign certain documents to acknowledge his entitlement to the money. According to the witnesses, Timothy told Wylie to leave him alone.
On September 26, 2011, Timothy filed a motion in the probate court pursuant to § 43-2-530, Ala. Code 1975,[1] to require Wylie to file an accounting of the estate.
*311 Wylie dissolved ASE on October 11, 2011.
On October 13, 2011, the probate court entered an order requiring Wylie to "appear and file an accounting and vouchers and to give cause ... why [the estate administration] ha[d] not been judicially settled." The probate court reissued identical orders to Wylie on December 2, 2011, and January 12, 2012, all of which ordered Wylie to provide an accounting with vouchers of expenses that had been paid by the estate.
Timothy's counsel also made repeated attempts to obtain vouchers from Wylie's counsel. He wrote letters requesting such vouchers, and he filed two motions to compel Wylie to provide vouchers, filed on June 25, 2012, and August 3, 2012, respectively. Wylie's counsel never provided the vouchers.
On April 3, 2012, Wylie filed what she styled a "Petition and Accounting for Final Settlement" of Derrell's estate. The document contained no vouchers documenting expenses paid by the estate, but it did contain copies of several checks written on ASE's bank account and signed by Wylie. In fact, most of the documentation contained in the submission from Wylie consisted of information about ASE's bank account. This was a source of repeated confusion in the probate-court hearing. For example, during one exchange in the hearing, the guardian ad litem was questioning Wylie about a certain expense listed in her accounting:
"[Wylie:] That's-and this was income that was earned [by ASE] after [Derrell Cockrell's] death.
"[Guardian ad Litem:] But you told the Court it was estate income when you filed it under oath, the estate of Derrell Cockrell. You told the Court when you reported that you had received that for the benefit of the estate.
"[Wylie's counsel]: Judge, I don't know what his point is. I made the point to the Court, yes, that's what it says, but that was a mistake. It's for the company, not the estate. You've got to decide that. Maybe the Court is going to rule that the assets of the company are assets of the estate. I don't know. But he keeps trying to make her say something other than what the documents are.
"We stipulate to the Court that we included, maybe erroneously, matters in this accounting that have to do with the company as opposed to Mr. Cockrell personally. That's what happened, and that's what these facts are."
Wylie's counsel stated numerous times in the hearing that he had "erroneously included in this accounting money and assets that relate to the business" of ASE. He even admitted that the accounting "was inaccurate and incomplete," but nothing in the record indicates that Wylie ever filed anything to correct the accounting.
Following Wylie's filing, Timothy filed a petition to remove Wylie as personal representative of Derrell's estate. On August 30, 2013, the probate court held a hearing on both Wylie's petition for final settlement and Timothy's petition to remove Wylie as personal representative. The probate court heard from four witnesses, with the majority of the testimony coming from Wylie.
In her testimony, Wylie, among other things, admitted that she did not open an estate bank account and that she did not *312 segregate estate funds from ASE's funds. Wylie stated that she had written checks on ASE's bank account for a total of $46,000 as repayment for a loan she claimed she had made to ASE, but she also admitted that the loan was an unsecured debt and that there was no documentation to support the loan. Wylie admitted that she paid Jankowski's personal expenses and debts from ASE's account after Derrell's death. Wylie stated that she did this because it was what Derrell wanted, despite the fact that such a request was not included in his will. Wylie admitted that she gave all the furnishings in the house to Jankowski because it was her understanding that the will required this. Wylie stated that she thought that "curtilage" meant furnishings in the house. Wylie admitted that she did not consult an attorney to ascertain the meaning of terms in the will. Wylie admitted that she paid her personal credit-card bills out of the ASE account following Derrell's death, claiming that she had purchased supplies for ASE with her credit card because ASE did not have a corporate credit card. Wylie further stated that she "was living out of the account" and that Derrell did the same when he was alive.
According to the accounting Wylie submitted with the petition for final settlement, ASE had $145,000 in its bank account at the time of Derrell's death and it received $206,000 in income in the two years following his death. In contrast, Wylie testified at trial that
"[t]here wasn't any money in the account when [Derrell] died except for the $55,000 that was left in the bank account. And then you subtract what was the payables from that, and I think it left something like $10,000. Then we had-that was in the account that was available."
Wylie further testified that the only asset ASE had at Derrell's death was accumulated, undistributed profits of $9,700. She answered a question as to the value of ASE by stating that Derrell "had 90 percent interest in the profits of the company"-which she asserted were "like 9-or $10,000"-an amount clearly based on ASE's cash on hand minus its debts at the time of Derrell's death, not its value as a going concern. Wylie also testified that "the value of [Derrell's] interest in the business as of the date of his death ... was like $9,700," and Wylie's counsel stated to the probate court: "[T]he only thing [Derrell's] estate was entitled to was the net value of that business on the date of his death, $9,500."[2] Wylie stated that overall she had distributed $17,000 to the residuary devisees, which she asserts is more than the amount to which the estate was entitled.
A federal tax return for the calendar year 2010, filed as a final return for ASE, reflected on a Schedule K-1 for Wylie a beginning share of 10 percent of ASE and an ending share of 100 percent. Wylie's personal tax returns for calendar year 2010 also represented that Wylie held ASE as a sole proprietorship.
On October 9, 2013, the probate court entered an order denying Wylie's petition for final settlement and removing her as personal representative of Derrell's estate. In the order, the probate court concluded that Wylie had:
"1. ... repeatedly and consistently failed to adhere to and comply with the lawful Orders of the Judge of Probate in this matter;
*313 "2. ... wasted, misappropriated and/or converted multiple assets of the Estate to her own use and benefit or to the use and benefit of others;
"3. ... failed to identify and segregate the assets of the Estate and failed to open a separate estate checking account for the deposit of funds of the Estate of Derrell T. Cockrell, Deceased. [Wylie] proceeded to commingle Estate assets with the assets of [ASE], and continued to operate the business of [ASE] without first identifying and segregating the cash and other assets which were the property of the Estate and subject to probate proceedings under the Will of [Derrell];
"....
"5. ... attempt[ed] to claim and convert the ownership of the assets of [ASE] to her own use and benefit, in contravention of the rights of the beneficiaries under the Will of [Derrell]. In furtherance of this position, Ms. Wylie has made affirmative representations in sworn oral testimony and in written form on personal federal and state tax returns filed with this Court in which she stated that she was the sole owner of [ASE] for the year in which [ASE] was dissolved, and as part of the dissolution process claimed its assets on her individual income tax returns for that year, all in derogation of the terms and conditions of the Will of [Derrell] and the rights of the beneficiaries under the Will."
The October 9, 2013, order also appointed a successor personal representative for the estate and taxed "costs of this proceeding in the amount of $19,856.20, which includes a reasonable fee of $18,045.00 for the services of Carl Pilgrim, Esq., as Guardian ad Litem, ... against the former personal representative, Margie Wylie."
On October 11, 2013, pursuant to § 12-2-21, Ala. Code 1975, Wylie filed an appeal of the probate court's order to the Montgomery Circuit Court.[3] On September 21, 2015, the circuit court entered an order affirming the probate court's October 9, 2013, order. Wylie appealed to this Court. See Ala. Code 1975, § 12-22-22 ("An appeal to the Supreme Court may be taken from the judgment of the circuit court on an appeal brought to such court under the provisions of this division.").
II. Standard of Review
As this Court recently stated in Hardy ex rel. Estate of Carter v. Hardin, 200 So.3d 622 (Ala. 2016) :
"The circuit court was sitting as an appellate court in this case and was bound by the ore tenus rule. The ore tenus rule required the circuit court to defer to the probate court's factual determinations where evidence supported those determinations. Specifically, where evidence is presented ore tenus, the findings of the trial court are presumed correct 'and will not be disturbed on appeal absent a showing of plain and palpable error.' Pilalas v. Baldwin Cnty. Sav. & Loan Ass'n, 549 So.2d 92, 95 (Ala. 1989) ; see also Williams v. Thornton, 274 Ala. 143, 144, 145 So.2d 828, 829 (1962) ('The finding of the Probate Court based on the examination of witnesses ore tenus is presumed to be correct, and will not be disturbed by this court or the Circuit Court unless palpably erroneous.').
*314 "As this Court stated in Yeager v. Lucy, 998 So.2d 460 (Ala. 2008) :
" ' " 'The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to 'disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala. 1995)." '
" 998 So.2d at 463 (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) ); see also, e.g., Woods v. Woods, 653 So.2d 312, 314 (Ala. Civ. App. 1994) ('[I]n determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the witness's apparent candor or evasiveness.... It is not the province of this court to override the trial court's observations.'). 'Under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness.' Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala. 1992). However, '[t]he ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005)."
200 So.3d at 629 ; see also Womack v. Estate of Womack, 826 So.2d 138 (Ala. 2002). "This Court ' "review[s] the trial court's conclusions of law and its application of law to the facts under the de novo standard of review." ' " Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala. 2010) (quoting Ex parte J.E., 1 So.3d 1002, 1008 (Ala. 2008), quoting in turn Washington v. State, 922 So.2d 145, 158 (Ala. Crim. App. 2005) ).
III. Analysis
A. Wylie's Removal as Personal Representative
Wylie contends that the circuit court erred by affirming the probate court's order removing her as personal representative of the estate. Section 43-2-290, Ala. Code 1975, provides:
"An administrator may be removed, and his letters revoked for his removal from the state; and an administrator or executor may be removed and his letters revoked for any of the following causes:
"(1) Imbecility of mind; intemperance; continued sickness, rendering him incapable of the discharge of his duties; or when from his conduct or character there is reason to believe that he is not a suitable person to have the charge and control of the estate.
"(2) Failure to make and return inventories or accounts of sale; failure to make settlements as required by law; or the failure to do any act as such executor or administrator, when lawfully required by the judge of probate.
"(3) The wasting, embezzlement or any other maladministration of the estate.
"(4) The using of any of the funds of the estate for his own benefit.
"(5) A sentence of imprisonment in the penitentiary, county jail or for hard labor for the county for a term of 12 months or more."
The probate court had concluded that evidence supported Wylie's removal as personal representative under *315 subparagraphs (2), (3), and (4) of § 43-2-290 ; the circuit court affirmed.
Wylie takes issue with the circuit court's affirmance of the probate court's decision to remove her as personal representative because, she says, that decision was based on a misunderstanding of the facts and the law. Specifically, Wylie apparently takes the position that, upon Derrell's death, she became the sole remaining holder of all interests in ASE, except to the extent of the estate's interest in whatever profits had been accumulated but not paid out before Derrell's death. Based on this position, she asserts in her appellate brief that
"[a] reading of [the probate court's] decision makes it abundantly clear that the Probate Court concluded that the assets of [ASE] were assets of [Derrell's] Estate and that Mrs. Wylie['s] ... management of [ASE's assets] after [Derrell's] death amounted to 'commingling' of funds and misappropriation of funds by Mrs. Wylie. It was based, in large part, on that finding that Mrs. Wylie was removed as [personal representative]."
Wylie's argument misunderstands the judgments of the probate court and the circuit court. Both courts clearly understood that the assets of ASE did not become assets of the estate at Derrell's death. The probate court specifically determined that "[Wylie] proceeded to commingle Estate assets with the assets of [ASE], and continued to operate the business of [ASE] without first identifying and segregating the cash and other assets which were the property of the Estate and subject to probate proceedings under the Will of [Derrell]." (Emphasis added.) Such findings belie Wylie's assertion that the probate court thought that the assets of ASE became the assets of Derrell's estate immediately upon Derrell's death.[4]
We also take note of Wylie's argument that "[t]he only interest that the Estate of Derrell Cockrell had in [ASE] was the value of [ASE] on the date of his death" and that "the value of [ASE] at the time of [Derrell's] death was $9,700." Yet, at trial, Wylie testified that Derrell had only a 90 percent interest in ASE when he died. Likewise, Wylie testified that "the value of [Derrell's] interest in the business as of the date of his death ... was like $9,700," a figure corresponding to 100%, not 90%, of the value of the undistributed net profits held by ASE at the time of Derrell's death, not its value as a going concern. It appears that Wylie takes the position that ASE had no value as a going concern at the time of Derrell's death and that the value of ASE at the time of Derrell's death was merely the value of the undistributed net profits it held. For the sake of moving forward, we will assume that Wylie's position is that the estate had a claim to 90 percent of "the value of [ASE] on the date of [Derrell's] death," not 100% of that value, and thus that the estate's interest was limited to 90 percent of "$9,700," the alleged undistributed profits of ASE at Derrell's death, not 90 percent of ASE's value as a going concern. Indeed, we are compelled *316 to the latter conclusion because Wylie insists she had no duty to account to the residuary devisees for her operation of ASE after Derrell's death and that, even if she did mismanage the finances of ASE, the residuary devisees could not challenge that mismanagement because it involves property of ASE in which they have no interest.
We first observe that Wylie failed to provide a complete and accurate accounting of her handling of the estate. In failing to do so she violated no less than three orders of the probate court directing her to provide such an accounting. This failure to follow multiple orders issued by the probate court is sufficient in itself under § 43-2-290(2) to remove Wylie as personal representative of the estate.
Furthermore, in the probate-court hearing, Wylie's counsel admitted that the accounting Wylie did provide with her petition for final settlement of the estate was "inaccurate and incomplete" because it contained documentation from the business records of ASE instead of documentation regarding the estate. It is clear from reviewing the transcript of the probate-court hearing and the accounting submitted by Wylie that this alleged mistake corresponded with the probate court's conclusion that Wylie commingled funds of the estate and of ASE and that, in so doing, she used funds of the estate for her personal benefit and for the benefit of others who were not residuary devisees.
In addition, Wylie admitted in her testimony that she failed to consult an attorney regarding the meaning of terms used in Derrell's will. This failure led Wylie, for example, to assume that the word "curtilage" referred to furnishings in the house, and so she deeded all the furnishings to Jankowski. Black's Law Dictionary defines "curtilage" as "[t]he land or yard adjoining a house, usu[ally] within an enclosure." Black's Law Dictionary 466 (10th ed. 2014).[5] The furnishings should have been part of the residuary estate to be distributed to the residuary devisees in shares according to the will. This admitted mistake constituted another legitimate reason for Wylie's removal as personal representative.
In other words, based on the foregoing, and regardless of Wylie's treatment of ASE, the probate court's judgment removing her as personal representative is due to be affirmed. Nevertheless we will address Wylie's arguments as to her handling of ASE following Derrell's death.
In general Wylie's arguments as to her handling of ASE and its operations following Derrell's death reflect an incorrect understanding of the law regarding limited-liability companies. Wylie argues in her appellate brief:
"Since the operating agreement of [ASE] made no provision about the death of [Derrell] and its effect on his membership, state law provides that [Derrell's] membership terminated. Given that the operating agreement allowed Mrs. Wylie to continue the business after [Derrell's] death, she became the sole member with freedom to operate [ASE] as [she] saw fit.
"Once [Derrell's] membership in the LLC ceased, neither his estate nor his heirs became members and hence had no further interest therein other than the value of his membership interest on the date of his death.
"Any claim of misappropriation of assets of the LLC by its sole member is a claim belonging to the LLC itself and *317 thus neither a former member nor his heirs have standing to complain."
(Emphasis added.)
Wylie is correct that, under state law, upon his death Derrell ceased to be a member of ASE. Section 10A-5-6.06, Ala. Code 1975, provides, in pertinent part:[6]
"(b) Subject to contrary provisions in the operating agreement, or written consent of all members at the time, a person ceases to be a member upon the occurrence of one or more of the following events listed in the following subdivision or paragraphs:
"....
"(3) In the case of a member who is an individual:
"a. The member dies.
"....
"(e) Upon a member's cessation of membership each of the following applies:
"(1) The member's governance rights terminate."
This Court has previously explained:
"The LLC Law distinguishes between membership in an LLC and 'financial rights' in an LLC. It defines a 'member' of an LLC as '[a] person reflected in the required records of a limited liability company as the owner of some governance rights of a membership interest in the limited liability company.' § 10A-5-1.02(7), Ala. Code 1975. 'Governance rights' are defined as '[a]ll a member's rights as a member of a limited liability company except financial rights, including without limitation, the rights to participate in the management of the limited liability company and to bind the limited liability company as provided in Section 10A-5-3.03.' § 10A-5-1.02(5), Ala. Code 1975.... 'Financial rights' are '[r]ights to a. share in profits and losses as provided in Section 10A-5-5.03, b. receive interim distributions as provided in Section 10A-5-5.04, and c. receive termination distributions as provided in Section 10A-5-7.05.' § 10A-5-1.02(3), Ala. Code 1975."
L.B. Whitfield, III Family LLC v. Whitfield, 150 So.3d 171, 183 (Ala. 2014) (emphasis omitted and emphasis added).
Section 10A-5-6.02, Ala. Code 1975, states, in pertinent part:
"(a) Except as otherwise provided in the operating agreement:
"(1) A membership interest in a limited liability company is assignable in whole or in part.
"....
"(3) An assignment only entitles the assignee to the financial rights of the assignor to the extent assigned."
Section 10A-5-6.04, Ala. Code 1975, states, in pertinent part:
"(a) Except as otherwise provided in the governing documents:
"(1) If a member who is an individual dies or if a court of competent jurisdiction adjudges a member to be incompetent to manage the member's person or property, the member's personal representative, conservator, legal representative, heirs, or legatees may exercise all the member's financial rights for the purpose of settling *318 the member's estate or administering the member's property, including any power the member had to transfer the membership interest."
In Whitfield, this Court explained that "[s]ection 10A-5-6.04(a)(1) ... [is] concern[ed] with the decedent member's 'financial rights' as and to the extent those rights exist apart from other aspects of the membership in the limited liability company previously held by the decedent." 150 So.3d at 185 (emphasis omitted).
Under the foregoing law, when Derrell died, his membership in ASE ceased, but his financial rights in ASE (a 90% interest) passed to his estate, and his personal representative was empowered to transfer those financial rights in accordance with the directives in his will. Derrell's will provided that the residue of his property was to be divided among the residuary devisees, so Derrell's financial rights in ASE were due to be transferred to them.[7]
Thus, Wylie is correct that the residuary devisees did not become members of ASE with governance rights and thus did not have a direct say in how Wylie operated ASE or in her decision ultimately to dissolve it. But Wylie is incorrect that the residuary devisees were entitled to only a 90 percent share of the undistributed "profits" ASE held on the date of Derrell's death.[8] As the Whitfield Court noted: " 'Financial rights' are '[r]ights to a. share in profits and losses as provided in Section 10A-5-5.03,[9 ] b. receive interim distributions *319 as provided in Section 10A-5-5.04, and c. receive termination distributions as provided in Section 10A-5-7.05.' § 10A-5-1.02(3), Ala. Code 1975." 150 So.3d at 183.
It is undisputed that Timothy and the other residuary devisees did not receive continuing distributions from ASE (based on Derrell's 90% financial rights) for the period following Derrell's death through its dissolution in 2011, nor did they receive a distribution upon the dissolution of ASE. Instead, Wylie treated ASE as if she became its sole owner following Derrell's death. Wylie then proceeded to use ASE's finances to cover her own personal expenses. As the appellees note, "[t]his is a blatant conversion of the Estate assets for personal use."
In short, the evidence in the record and limited-liability-company law support the probate court's conclusion that Wylie converted assets of Derrell's estate for her own use and benefit and for the benefit of others who were not the residuary devisees and that she commingled funds of ASE and assets of the estate. Therefore, the circuit court did not exceed its discretion in affirming the probate court's decision to remove Wylie as personal representative of Derrell's estate.
In her application for rehearing, Wylie accuses this Court of violating appellate-review standards because this Court addresses certain statutes (discussed above) not included by the appellees in their arguments to the probate court, the circuit court, or this Court. She also makes a generalized assertion that this Court has misapplied certain statutes governing limited-liability companies.
As to the latter assertion, Wylie states:
"1. This Court[ ] misapplied the law when it held that, despite its finding that Derrell's membership interest in ASE terminated upon his death, his financial rights in ASE were transferred to his estate and those rights included ' " '[r]ights to a. share in profits and losses as provided in Section 10A-5-5.03, b. receive interim distributions as provided in Section 10A-5-7.05.' § 10A-5-1.02(3), Ala. Code 1975." [ L.B. Whitfield, III Family LLC v. Whitfield, ] 150 So.3d [171,] 183 [ (Ala. 2014) ].' ..."
Although Wylie makes the foregoing general assertion of error, she fails to demonstrate how this Court misunderstood or misapplied the statutes she cites or any other statute discussed in this opinion. Indeed, she appears to concede at one point that our decision reflects the application of the principle that, subject to due-process concerns, this Court " ' "will sustain the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge" ' " (quoting Wylie's application for rehearing, quoting Pavilion Dev., L.L.C. v. JBJ P'ship, 979 So.2d 24, 43 (Ala. 2007) (Murdock, J., concurring specially), quoting, in turn, Ex parte Wiginton, 743 So.2d 1071, 1072-73 (Ala. 1999) ). Nevertheless, Wylie contends, "this principle of law eviscerates the adversarial nature of our system of justice" in the present case because we allegedly relied on arguments, or at least statutes, not presented by the parties or considered by the judges below.
It was Wylie, however, in her brief on original submission, not this Court, who cited and discussed the rationale in Whitfield, and who raised the issue of the proper application of § 10A-5-6.04, and who discussed " '[f]inancial rights' [as] defined in § 10A-5-1.02(3)." Likewise, it was Wylie who argued to the probate court and to *320 the circuit court that she had no duty to account to the residuary devisees regarding her treatment of ASE after Derrell's death because, she posited, the residuary devisees had no continuing interest in ASE. The residuary devisee's argued to the contrary, contending that Wylie had a duty to account to them and that her mishandling of ASE following Derrell's death (among other things) had adversely affected their rights. The probate court and the circuit court-courts that are presumed to know and follow the law even if they do not expressly note every statute or other authority that informs their understanding-correctly rejected Wylie's argument. See Ex parte Atchley, 936 So.2d 513, 516 (Ala. 2006) ("We presume that trial court judges know and follow the law.").
Our discussion of some authority in addition to that cited by Wylie or even by the appellees in order to fully respond to Wylie's arguments as an appellant is not improper-it is our obligation. When an appellant presents an erroneous legal position, it is our duty to exposit the law applicable to that position and to dispel that error. It is not for us to publish an opinion truncating our discussion of the law upon which the bench and bar and public will thereafter rely simply because the statute that makes the appellant's argument erroneous has been left out of the appellate briefs. In Ex parte Hutcherson, 677 So.2d 1205, 1209 (Ala. 1996), this Court reiterated the basic principle that, in order to secure a reversal of a judgment, an appellant must show error. It is our responsibility to determine whether error has been shown, and in executing that responsibility our duty is to the law. See United States v. Rogers, 45 U.S. (4 How.) 567, 572, 11 L.Ed. 1105 (1846) (Chief Justice Taney, speaking for the Court: "It is our duty to expound and execute the law as we find it.").
"In other words, our duty, first and foremost, is to the correctness of law. That is not something the parties ultimately dictate to us.
" ' " 'Appellate review does not consist of supine submission to erroneous legal concepts .... Our duty is to enunciate the law on the record facts. Neither the parties nor the trial judge, by agreement or by passivity, can force us to abdicate our appellate responsibility.' " '
" Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala. 2004) (quoting Forshey v. Principi, 284 F.3d 1335, 1357 n. 20 (Fed. Cir. 2002), quoting in turn Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir. 1972) )."
Ex parte Vanderwall, 201 So.3d 525, 541 (Ala. 2015) (Murdock, J., concurring specially). Wiley's position is without merit.
B. Payment of the Guardian ad Litem's Fee
Wylie next argues that the circuit court erred in affirming the probate court's decision requiring Wylie to pay the guardian ad litem's fee of $18,045. Wylie concedes that "[t]here is no dispute in this case that the appointment of a [guardian ad litem] was necessary." She argues, however, that the fee entered by the probate court was erroneous because, she contends, "there was never any motion, or evidentiary submission in the record before the Probate Court requesting or supporting a fee request from the [guardian ad litem]." Wylie also observes that the matter was not discussed in the probate-court hearing held August 30, 2013. Wylie argues that "[t]o award an $18,000-plus [guardian ad litem's] fee against Mrs. Wylie without notice, proof, or hearing" violates due process.
*321 [10]
The law is clear that the probate court had the power to award a guardian ad litem fee's as part of the costs in the case. Rule 17(d), Ala. R. Civ. P., provides, in part:
"In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for services rendered in such cause, to be taxed as a part of the costs in such action, and which is to be paid when collected as other costs in the action, to such guardian ad litem."
See Rule 1(a), Ala. R. Civ. P.; see also Committee Comment to the Amendment to Rule 1(a) effective January 1, 2013 ("[T]he Rules of Civil Procedure apply in the probate court, when such application is appropriate and except when particular statutes provide otherwise."). And, "[i]t is well settled that '[t]he matter of the guardian ad litem's fee is within the discretion of the trial court, subject to correction only for abuse of discretion.' " Historic Blakeley Found., Inc. v. Williams, 40 So.3d 698, 704 (Ala. 2009) (quoting Englund v. First Nat'l Bank of Birmingham, 381 So.2d 8, 12 (Ala. 1980) ).
Wylie is correct, however, that nothing in the submitted record from the circuit court shows that the guardian ad litem requested a fee from the probate court, nor does the record contain any documentation of the time the guardian ad litem spent working on the case that could justify the amount of the fee awarded. The probate court's October 9, 2013, order twice referenced "the Report of the Guardian ad Litem" in conjunction with the hearing as to Wylie's petition for final settlement and the residuary devisees' petition to remove Wylie as personal representative, but nothing in the record or the appellate briefs suggests that the guardian ad litem had filed a fee petition or that the guardian ad litem's report included a fee request with supporting documentation. Moreover, the residuary devisees, who are appellees in this case and some of whom are represented by the guardian ad litem in this appeal, fail to address Wylie's argument as to the guardian ad litem's fee; they direct us to no evidence in the record to support the guardian ad litem's fee award; and they make no assertion that such evidence was presented to the probate court but not included in the record on appeal.
This Court encountered a circumstance similar to the present case in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala. 1988), in which a circuit court awarded $5,000 to the guardian ad litem in an estate action:
"Our review of the record discloses no evidence regarding the services performed by the guardian ad litem other than his presence at the July 21, 1986, hearing on the Bank's petition for final settlement, at which he asked several questions of Kathryn Miree. However, there was no testimony offered at that hearing concerning the services the guardian ad litem had performed, nor does the trial court's order refer to the nature or character of the services performed by the guardian ad litem. We, therefore, vacate the judgment as to the guardian ad litem's fee and instruct that, on remand, an evidentiary hearing be held for the purpose of determining a reasonable guardian ad litem fee and an order prepared setting forth 'with some *322 particularity the findings from the evidence adduced.' Lolley v. Citizens Bank, 494 So.2d [19,] 21 [ (Ala. 1986) ]. See also Clement v. Merchants National Bank of Mobile, [493 So.2d 1350 (Ala. 1986) ]."
530 So.2d at 750-51.
Similarly, in Wehle v. Bradley, 195 So.3d 928 (Ala. 2015), this Court found that the evidence in the record in support of a circuit court's attorney-fee award in an estate action was lacking. The Court observed that "it does not appear that the circuit court had an adequate factual record for making the particular award it made," in part because of "the lack of any evidence of the time consumed outside appearances before the circuit court, and no evidence of the total amount of time consumed both in and out of the courtroom," evidence that "typically is an important consideration" in determining an attorney-fee award. 195 So.3d at 946. The Court also
"emphasize[d] that a 'trial court's order regarding an attorney fee must allow for meaningful review by articulating the decisions made, the reasons supporting those decisions, and the performance of the attorney-fee calculation.' City of Birmingham [v. Horn], 810 So.2d [667,] 682 [ (Ala. 2001) ]. The circuit court's order in this case, conclusory in nature, fails to meet this standard."
195 So.3d at 946. In light of those considerations, the Wehle Court reversed the circuit court's order insofar as it determined the amount of the attorney fee and remanded the case for the circuit court to conduct a hearing concerning the attorney-fee award and to provide an order that could allow for meaningful review of the decision.
In light of Van Schaack and Wehle, we reverse the circuit court's judgment to the extent it affirmed the probate court's fee award to the guardian ad litem, and we remand the case to allow whatever further proceedings may be necessary to establish a proper record and to provide a decision that allows for a meaningful review of any award to the guardian ad litem.
IV. Conclusion
The circuit court did not exceed its discretion in affirming the probate court's decision to remove Wylie as personal representative. The record, however, lacks supporting documentation of the probate court's fee award to the guardian ad litem, and no order from either the probate court or the circuit court provides us with sufficient information to perform a meaningful review of that decision. We therefore reverse that portion of the circuit court's judgment affirming that award and remand the case for further proceedings consistent with this opinion.
APPLICATION OVERRULED; OPINION OF SEPTEMBER 30, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Bolin, Shaw, Main, and Bryan, JJ., concur.

Section 43-2-530, Ala. Code 1975, provides:
"Any executor or administrator may be required by citation to file his accounts and vouchers and to make a settlement, notwithstanding any provision in any will or other instrument to the contrary; and, if after service of the citation, he fails to file his accounts and vouchers for a settlement on the day named in the citation, the probate court or other court having jurisdiction of the said estate may compel him to do so by attachment or may proceed to state the account against him from the materials on file or such other information as may be accessible, charging him with such assets as may have come to his hands."

As discussed further below, these and similar statements by or on behalf of Wylie fail to reflect that Derrell owned only a 90% interest in ASE.

After she filed her appeal from the probate court to the circuit court, Wylie also filed a petition to remove the administration of Derrell's estate to the circuit court. On October 17, 2013, the circuit court entered an order removing the estate administration to the circuit court. The issue whether the estate administration was properly removed to the circuit court is not before us in this appeal.

Just as the probate court clearly indicated its understanding that the assets of ASE did not become assets of Derrell's estate upon his death, it likewise recognized that the assets of ASE did not become Wylie's assets upon Derrell's death. In fact, it was Wylie's "attempt to claim and convert the ownership of the assets of [ASE] to her own use and benefit, in contravention of the rights of the beneficiaries under [Derrell's] Will," that was central to the probate court's judgment. As noted above, ASE did not dissolve upon Derrell's death. And indeed, Wylie continued to operate ASE as a going concern for approximately two more years. In so doing, however-and this is central to her removal as personal representative-Wylie treated that operation and its profits as if she alone had a financial interest in it, as opposed to only a 10% interest in it.

As Black's also suggests, the meaning of "curtilage" may be broader for Fourth Amendment purposes.

The operative limited-liability-company law in this case is found in § 10A-5-1 et seq., Ala. Code 1975, which governed limited-liability companies for some time before and at the time of Derrell's death. We note that, subsequently, in 2014, the legislature enacted the Alabama Limited Liability Company Law of 2014, effective January 1, 2015. Act No. 2014-144, Ala. Acts 2014. Act No. 2014-144 updated Alabama's limited-liability-company law, repealed existing law in Chapter 5 of Title 10, and replaced Chapter 5 of Title 10 with Chapter 5A.

Although not directly applicable, see note 6, supra, we note that § 10A-5A-5.02, Ala. Code 1975, of the limited-liability-company law adopted by the legislature in 2014 states that "[a] transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled."

Pursuant to § 10A-5-7.01, Ala. Code 1975, absent a provision otherwise in the governing documents, a limited-liability company continues its existence after the death of one of its members. If a provision terminating ASE upon the death of a member had been adopted in the present case, ASE would have had to be terminated at the time of Derrell's death, and each member, or his or her estate or heirs, would be entitled to a termination distribution. But that is not the case here. (We note that the value of such a termination distribution, i.e., the value of the decedent member's interest in the limited-liability company at the time of his or her death, would typically be more substantial than the value of some of or all the undistributed "profits" earned by the company during one or more recent accounting periods.)
Wylie's reliance on Fausak's Tire Center, Inc. v. Blanchard, 959 So.2d 1132 (Ala. Civ. App. 2006), is misplaced for a similar reason. In Fausak's Tire Center, "the evidence was undisputed that the members of the LLC had orally agreed that, in the event of a member's death, the LLC would purchase, and the member's estate would sell, the member's interest in the LLC." 959 So.2d at 1144 (emphasis added). The reason that the Court of Civil Appeals had to confirm the value of the decedent member's interest in the LLC at the date of his death was because-unlike in this case-the remaining members of the LLC were going to buy that interest from the decedent's estate. Indeed, as the members' oral agreement indicated, and as the trial court in Fausak's Tire Center concluded without objection: " 'The twenty (20%) percent member ownership interest in [the LLC] the decedent owned at the time of his death constitutes an asset of the decedent's estate.' " 959 So.2d at 1136. Thus, contrary to Wylie's assertion, Fausak's Tire Center does not stand for the proposition that the estate of a decedent member of an LLC in all cases is entitled only to the value of the decedent member's interest in the LLC at the time of his or her death.

Section 10A-5-5.03, Ala. Code 1975, provides:
"The profits and losses, income, deductions, and credits, and items of income, deduction, and credits of the limited liability company shall be allocated among the members in the manner provided in the operating agreement. If the operating agreement does not so provide, profits and losses, income, deductions, and credits, and items of income, deductions, and credits shall be allocated on the basis of the pro rata value of the contributions made by each member to the extent they have been made and not returned."

In this appeal, Wylie makes no meaningful argument challenging the award of the guardian ad litem's fee against her personally.